NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 08-2795 & 08-2808
_____

UNITED STATES OF AMERICA

v.

GEORGE HERMAN RUTH, JR.,
                              Appellant at No. 08-2795

WILLIAM ROBERT PILKEY,
                              Appellant at No. 08-2808
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal Nos. 06-cr-0695-001
and 06-cr-0695-002
(Honorable Anne E. Thompson)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 4, 2010

Before:  SCIRICA, FUENTES and JORDAN, *Circuit Judges.*

(Filed: December 29, 2010)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

A jury found defendants George Herman Ruth, Jr. and William Robert Pilkey

guilty of one count of conspiring to file false claims with the Internal Revenue Service

(IRS) in violation of 18 U.S.C. § 286, and sixty counts of filing false claims under 18 U.S.C. § 287. On appeal, both defendants challenge their convictions claiming suppression of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and violations of their Sixth Amendment right to a speedy trial. Each defendant also raises arguments specific to himself. Pilkey contends he was denied the ability to represent himself in violation of the Sixth Amendment. Ruth contends the admission of an incriminating letter sent to the IRS as part of a Freedom of Information Act request violated his Fifth Amendment privilege against self-incrimination and that an upward variance in his sentence was unreasonable. We will affirm.

I.

The conduct at issue began while Ruth and Pilkey were incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey. The defendants submitted tax returns to the IRS claiming refunds in the names of fellow inmates for wages never earned and giving addresses where the inmates never lived. These inmates fell into three groups: (1) those who were aware of the fraud, (2) those who were not aware of the fraud and had instead provided their personal information in order to receive legal assistance from Ruth and Pilkey, and (3) those who testified they did not know the defendants. Ruth and Pilkey were able to avoid having to submit W-2 forms by misrepresenting that fellow prisoners were working at companies that had gone bankrupt. As part of the scheme, defendants obtained employer identification numbers for these bankrupt companies. To avoid detection by prison authorities, defendants enclosed envelopes addressed to the IRS

2

within large envelopes sent to collaborators outside of prison. Defendants had the tax returns sent to mail-forwarding services who would then deliver the returns to their collaborators.

Defendants' scheme resulted in the IRS issuing refunds of tens of thousands of dollars. Eventually the IRS became suspicious of returns filed by persons in federal custody using the same type of form and listing the same employers and addresses. In May 2004, an inmate came forward who informed prison officials about the fraudulent tax scheme. Based on this information, prison officials searched the lockers of several inmates, including Ruth and Pilkey, and recovered records and material used to file the fraudulent tax returns.

In August 2006, Ruth and Pilkey were indicted. In August 2007, a grand jury returned a sixty-one count superseding indictment. Before trial, the District Court denied defendants' speedy trial motions noting that extensions of time were either sought with consent of the parties or required by the court. It also rejected contentions that Ruth's counsel and the government conspired to falsify motions asking for a continuance.

The jury convicted defendants on all counts. At sentencing, the District Court granted the government's request for a two-level enhancement to the defendants' offense level for obstruction of justice because their testimony at trial was irreconcilably inconsistent with the jury's verdict. The District Court then varied upward under 18 U.S.C. § 3553(a), departing from the guideline range of fifty-one to sixty-three months, in order to impose a sentence of eighty-four months.

II.

Ruth and Pilkey contend the government violated their Fifth Amendment right to due process by suppressing exculpatory evidence. To establish a due process violation for the suppression of exculpatory evidence, defendants must show: "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) (internal quotations omitted). "Brady does not compel the government to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *Id.* at 213 (internal quotations omitted). In *Pelullo*, we found the fact the government made available thousands of documents for review by the defense weighed heavily against finding a *Brady* violation, even though the government refused to make copies of the documents at its own expense. *Id.* at 212-13.

Here, defendants were aware of the existence of tapes of fellow inmates' conversations, some of which discussed mail fraud schemes. The government made the tapes available for review by the defense attorneys and defendants. If defendants desired copies to prepare for trial, they could have sought CJA funds at an earlier point. *See Pelullo*, 399 F.3d at 212 n.15 ("[Defendant] could have sought reimbursement under the Criminal Justice Act for the expenses of obtaining the documents."). Defendants fail to

explain why they[1] did not take advantage of the government's offer to make the tapes available for review. *Cf. id.* ("In any event, his putative financial inability to obtain copies of the warehouse documents does not explain why he (or his attorney) did not accept the government's alternative offer in making the documents available for an on-site inspection.").

Ruth and Pilkey also contend their Sixth Amendment right to a speedy trial was abridged because the District Court improperly granted trial continuances. We consider and weigh four factors: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Burkett v. Cunningham*, 826 F.2d 1208, 1219 (3d Cir. 1987) (internal quotation omitted).

The reasons for the delay weigh against defendants. Ruth alleges there were no plea discussions and that his counsel misrepresented his assent to the court.[2] The District Court rejected the contention that the continuances were granted under false pretenses. Ruth has failed to point to any evidence demonstrating the court's factual finding was clearly erroneous.[3] Pilkey also argues the delays were a deliberate attempt to hamper the defense, but offers nothing to support his claim. The continuances were either jointly

---

[1] Ruth eventually chose to proceed *pro se*. Ruth acknowledges that his prior counsel and standby counsel had the opportunity to review the tapes, but nonetheless requested to do so himself. The District Court found the government made the material available for Ruth to review after he decided to proceed *pro se*. Ruth stated that he chose to limit his time listening to the tapes in order to prepare other matters.

[2] Attached to the reply brief, Ruth submitted orders granting three continuances that purportedly show the government requested the continuances. But the orders described the continuances as "joint" and noted defendants consented.

[3] We review questions of law de novo and questions of fact for clear error. *Pellulo*, 399 F.3d at 202.

requested or requested by the defendants.  *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) ("[P]ortions of the delay which are attributable to the defendant or his counsel will not be considered for purposes of determining whether the defendant's right to a speedy trial has been infringed." (internal quotations omitted)).

The length of the delay also weighs against the defendants.  Under the facts here, the delay of approximately sixteen months was not unreasonable.  We have previously found that a similar delay of thirteen months did not demonstrate oppressive pretrial delay absent substandard conditions.  *See Hakeem v. Beyer*, 990 F.2d 750, 760-61 (3d Cir. 1993) (citing *United States ex rel. Stukes v. Shovlin*, 464 F.2d 1211, 1214 (3d Cir. 1972)).

Defendants cannot show prejudice.  Pilkey claims that witnesses were unable to recall the events accurately but provides no support for this assertion.  Ruth offers no evidence or explanation demonstrating prejudice.  We have found a similar period of delay did not impair witnesses' recollection so as to be prejudicial.  *Hakeem*, 990 F.2d at 764.  As all factors weigh against defendants, any delay did not violate Ruth's and Pilkey's Sixth Amendment right to a speedy trial.[4]

---

[4] In his reply brief, Ruth argues for the first time that the Speedy Trial Act, 18 U.S.C. § 3161, was violated.  "It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." *United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) (citation omitted).  But, even if we were to reach the merits of the argument, it fails.   The reply brief states that the District Court failed to rule such time excludable as required under *Bloate v. Untied States*, 130 S. Ct. 1345, 1351-52 (2010), and § 3161(h)(7).  But orders granting the joint continuances contain the required finding.

Pilkey contends he was denied his Sixth Amendment right to self-representation because the District Court advised him that his lack of knowledge of the Federal Rules of Evidence and other areas of law would be detrimental to his defense. "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California*, 422 U.S. 806 (1975). But a defendant must assert his right to proceed *pro se* "affirmatively and unequivocally." *United States v. Peppers*, 302 F.3d 120, 129 (3d Cir. 2002). The trial court "has the burden of establishing that the defendant who does so acts voluntarily, and that he understands both the scope of the right sacrificed and the restrictions and challenges that he will face." *Id.*

Pilkey's statement of desire to proceed *pro se* was not unequivocal and was, at most, an expression of frustration with his counsel. Pilkey told the District Court, "I know the perils of defending myself, but I also know the perils if we're not prepared, and we're not prepared. Until we get there I'd just as soon represent myself." During the *Faretta* colloquy (to determine waiver of right to counsel), Pilkey repeatedly equivocated on self representation. He asserted: "I want to prepare this case. An attorney can present this case" and "My decision is I'll represent myself, and hopefully a standby attorney[sic], and when the case I prepared[sic] maybe they can take over." Pilkey also stated that he did not desire to represent himself "if [the court was] going to give me the opportunity to hear the tapes and prepare." As required, the District Court gave "specific forewarning of the risks that foregoing counsel's trained representation entails" as

7

required.  *Peppers*, 302 F.3d at 133.  There was no coercion.  Because Pilkey did not state

his desire to proceed *pro se* unequivocally, there was no error in retaining counsel.

Ruth argues the admission of the FOIA request violated his Fifth Amendment

privilege against self-incrimination.  But, "[t]he privilege against self-incrimination

applies to *compelled* incrimination."  *Fraternal Order of Police, Lodge No. 5 v. City of*

*Philadelphia* (*FOP II*), 859 F.2d 276, 282 (3d Cir. 1988) (emphasis in original).  In *FOP*

*II*, questions contained in a voluntarily application for a special police unit did not

compel officers to incriminate themselves.  *Id.*  Nothing indicates that Ruth was asked to

submit the incriminating statements he made in order to receive the information

requested.[5]

Ruth argues the District Court's sentence of eighty-four months on Count One was

unreasonable.[6]  The district court follows a three-step sentencing process:

> (1) Courts must continue to calculate a defendant's Guidelines sentence
> precisely as they would have before Booker.  (2) In doing so, they must
> formally rule on the motions of both parties and state on the record whether
> they are granting a departure and how that departure affects the Guidelines
> calculation, and take into account our Circuit's pre- Booker case law, which
> continues to have advisory force.  (3) Finally, they are required to exercise

---

[5] In his FOIA request, Ruth sought documents related to any investigations of tax fraud
that targeted him.  In the request, he states he filed fraudulent returns but claims this
admission refers to prior crimes and not the conduct charged in this case.

[6] We review sentencing determinations as follows:

> We review both procedural and substantive determinations for abuse of
> discretion.  If there are no procedural errors, our substantive review is
> highly deferential and we will affirm unless no reasonable sentencing court
> would have imposed the same sentence on that particular defendant for the
> reasons the district court provided.

*United States v. King*, 604 F.3d 125, 144 (3d Cir. 2010) (internal quotations and citations
omitted).

8

their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (alteration in original) (internal quotations and citations omitted). The Probation Office calculated Ruth's guideline range as forty-one to fifty-one months. During the second step, the District Court applied a two-level enhancement to Ruth's offense level for obstructing or impeding the administration of justice under § 3C1.1 of the Sentencing Guidelines,[7] resulting in a range of fifty-one to sixty-three months. At the third step, under § 3553(a) the District Court increased Ruth's sentence to eighty-four months.[8]

The District Court did not abuse its discretion in varying upward under § 3553(a). "[T]he District Court must reasonably apply the § 3553(a) factors based on the totality of the circumstances." *United States v. King*, 604 F.3d 125, 144 (3d Cir. 2010) (citations omitted). The District Court considered several factors (under § 3553(a)) that justified a longer sentence. The court found the guidelines did not account for the danger posed by such a sophisticated and complex scheme, that was nationwide in scope and perpetrated by federal inmates. The court also noted defendants preyed on other inmates by

---

[7] Ruth in the reply brief challenges the application of the two-level enhancement under § 3C1.1 because the court failed to give him notice under Rule 32(h). The failure to raise this argument in the opening brief constitutes waiver. *Pelullo*, 399 F.3d at 222. However, even if we were to consider Ruth's argument, the District Court did not abuse its discretion. Notice is only required under Rule 32(h) when the ground for departure is not identified in the parties' presentencing submissions. Fed. R. Crim. P. 32(h). The government asked for the enhancement in its submissions.

[8] Pilkey at the end of his brief adopts arguments made in Ruth's brief. Even if such incorporation were proper, the arguments fail for the same reasons.

obtaining their personal information under false pretenses. Furthermore, the court cited defendants' past and present crimes in concluding they demonstrated "a pattern of criminal conduct, substantial, bold, without any remorse." We will affirm as "a reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 145 (internal quotation omitted).

III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.