**GREGOIRE GEORGE, JR., Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2012-0114

Supreme Court of the Virgin Islands

July 15, 2013

SHARI N. D'ANDRADE, ESQ., Kellerhals, Ferguson, Fletcher, and Kroblin, LLP, St. Thomas, USVI, *Attorney for Appellant.*

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(July 15, 2013)

CABRET, *Associate Justice.* Gregoire George, Jr., appeals his convictions for first-degree robbery, grand larceny, first-degree assault, and the use of a dangerous weapon during the commission of these crimes. He argues that the Superior Court erred in denying his motion for a mistrial because the People violated his due process rights by failing to provide a legible, executed copy of a testifying accomplice's plea agreement before trial, that the accomplice's testimony could not have supported his conviction because it was uncorroborated and incredible as a matter of law, and that the surveillance video introduced at trial was not properly authenticated. For the reasons that follow, we reject these arguments and affirm George's convictions, but remand for resentencing in compliance with 14 V.I.C. § 104.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2011, Marco Colon was approached by a man he knew as "Wasee" — who he later identified as Gregoire George, Jr. — while at a safari bus stop in Red Hook on St. Thomas. George asked Colon to assist him in robbing Jackpots and Java, a coffee shop and gaming center in Red

Hook, by keeping an eye on an employee while he got the money out of the cash register. When the two men entered the coffee shop around 8 a.m., George was carrying a black handgun[1] and his face was covered, while Colon did not have a weapon and did not cover his face. George told Richelle Mills — the employee running the shop that day and the only person there when George and Colon arrived — to get on the floor and not move, otherwise he would shoot her. Colon then put his hands on her back to keep her on the floor as George emptied the register, taking $888.00. After George was finished, he attempted to take Mills's cell phone, but Colon told George to leave it. George and Colon then left the shop, changed clothes, and caught a safari bus to Tutu Park Mall, where they split up. Following their departure from the shop, Mills went to a neighboring business to call the police.

Shortly after the robbery, Colon was identified as one of the perpetrators, leading to his arrest on May 16, 2011. After his arrest, Colon gave a statement to the police, admitting to participating in the robbery, and identifying his accomplice only as "Wasee." Colon did not know Wasee's real name or where he lived at this time, but knew that his last name was "George." Colon later selected Gregoire George, Jr.'s photograph out of a photo array, identifying him as Wasee. On June 6, 2011, Colon was charged with aiding and abetting first-degree robbery, first-degree assault, grand larceny, and using a dangerous weapon during the commission of these crimes. He later accepted a plea deal in which he agreed to testify against George and plead guilty to second-degree robbery, and in return the People agreed to recommend a six-year jail sentence and dismiss the remaining charges. The plea agreement was executed in Superior Court on October 29, 2011.

George was later arrested in January 2012 and charged with first-degree robbery, first-degree assault, grand larceny, and using a dangerous weapon during the commission of these crimes, to which he pleaded not guilty. George's appointed counsel requested on February 29, 2012 that the People disclose all documents related to the case. The People responded with a reciprocal request, and later invited George's counsel to inspect the People's case file at the Department of Justice. But when defense counsel's investigator attempted to do just that, he was notified

---

[1] Colon described the weapon as a handgun at trial, but Mills testified that although she thought it was a gun at first, when George drew closer, it "looked more like a pipe." (J.A. 300.)

that the file would not be made available. George then filed a motion to compel on May 9, 2012, which the court denied on June 7, 2012, finding that although the People normally allow the defense to inspect its files, it had no obligation to do so. The People then faxed George over one hundred pages of documents on July 18, 2012, one day before trial was initially scheduled to begin, which included Colon's plea agreement and the statements he had given to police. The trial was then continued until August 2, 2012 to allow George to review the documents.

The trial took place on August 2 and 3, 2012. On the morning of August 2, George moved for a continuance because he had not been provided with an executed copy of Colon's plea agreement. The People replied that the plea agreement was executed in court and on file with the court and not in the People's possession, but that the copy turned over to George in discovery was identical to that signed in court. The court instructed the People to look through the court's files to find the executed plea agreement during a recess and allowed the trial to proceed. The People then called Colon as its first witness, and the court gave an accomplice testimony instruction before he began his testimony. Colon identified George as Wasee, his accomplice during the robbery, and testified to the events of May 10, 2011, stating that he and George robbed the shop and that George used a gun to do so. He also testified that he had known George since at least 2008 or 2009, shortly before George's brother passed away. The People also elicited testimony regarding Colon's plea agreement and his motivation for testifying.

During cross-examination, defense counsel attempted to ask Colon about the terms of his plea agreement, initially indicating that the People had recommended only six months on the robbery charge, calling this a "pretty good plea deal." (J.A. 245-46.) This prompted an objection from the People. During the subsequent sidebar, the People stated that the recommended sentence was six years, and defense counsel argued that the copy of the plea agreement provided by the People was unsigned and the sentencing recommendations were illegible. The court then took a recess to locate the executed copy of the plea agreement in its files, which it produced after the recess. Defense counsel immediately moved for a mistrial, arguing that George was "unduly prejudiced by not having this document . . . prior to [Colon's] cross examination." (J.A. 251.) The court denied the mistrial motion, stating that the trial had been continued for two weeks to compensate for the People's late disclosure and that the

374

defense could have requested the court's copy at any time. Defense counsel then continued Colon's cross-examination, during which he testified to the terms of the plea agreement.

Next, the People called LaVelle M. Campbell, who worked for the Virgin Islands Department of Education and was assigned to the Intelligence Department of the Virgin Islands Police Department. The owner of Jackpots and Java, Elizabeth Zimmerman, called him on the day of the robbery asking him to contact "Josh," the person who installed the shop's security system, to request a download of the surveillance footage. Campbell helped Zimmerman contact Josh, who downloaded the surveillance footage onto a white jump drive, which Zimmerman gave to Campbell to give to the police investigator. He then identified People's Exhibit 3 as the jump drive that the footage was downloaded onto. Campbell testified that he had reviewed the video at Jackpots and Java before it was downloaded onto the jump drive, and then again from the jump drive itself a week before trial. He indicated that the footage on the jump drive was the same as that he had viewed shortly after the robbery. Overruling George's objection, the court allowed the People to introduce the jump drive into evidence. Following Campbell's testimony, George stipulated that an affidavit submitted by Zimmerman was sufficient to establish the chain of custody, but maintained his objection to Campbell's in-court identification of the white jump drive.

When the trial resumed the next day, the People called Mills. She testified to the events of the robbery, stating that she recognized George at trial because he was playing the slot machines in Jackpots and Java thirty minutes before the robbery. She also testified that she viewed the surveillance footage following the robbery, and later as contained on the jump drive, and that it was an accurate depiction of the robbery. The People then played the video for the jury, while Mills identified herself and narrated certain portions. Following a brief cross-examination, Mills was excused and the People rested. George then moved for a judgment of acquittal, arguing that the evidence was insubstantial because the only evidence linking George to the crime was Colon's uncorroborated testimony. The court denied the motion, and because George did not present any evidence, the parties made their closing arguments. The court then instructed the jury, again giving them an accomplice testimony instruction. The jury later returned a guilty verdict on all counts.

Following trial, George moved for a new trial or, in the alternative, judgment of acquittal, arguing that a new trial was required because the People violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by failing to provide a legible copy of the plea agreement. He also contended that Colon's uncorroborated testimony was insufficient to support his conviction, and that the surveillance video should not have been admitted because the jump drive onto which it had been copied was not properly authenticated. At the sentencing hearing on September 28, 2012, the court denied this motion. In its October 25, 2012 Judgment and Commitment, the Superior Court sentenced George to seven years imprisonment for first-degree robbery, which was merged with second-degree robbery and grand larceny, and five years and a $10,000 fine for the use of a dangerous weapon during first-degree robbery, which was merged with the charges of using a dangerous weapon during second-degree robbery and during grand larceny. The court also sentenced him to seven years for first-degree assault, and five years and a $10,000 fine for the use of a dangerous weapon during first-degree assault, with all terms of imprisonment to run concurrently and with credit for time served.

## II. JURISDICTION

We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The Superior Court's October 25, 2012 Judgment and Commitment is a final order, *see Brown v. People*, 56 V.I. 695, 698 (V.I. 2012), and George filed a timely notice of appeal on October 9, 2012.[2]

## III. DISCUSSION

George argues that the Superior Court erred in failing to declare a mistrial because the People's failure to provide him with a legible,

---

[2] Supreme Court Rule 5(b)(1) provides that "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." Therefore, even though George filed his notice of appeal before the Superior Court's Judgment and Commitment was entered into the docket, it is timely. *See Potter v. People*, 56 V.I. 779, 787 n.10 (V.I. 2012).

executed copy of Colon's plea agreement constituted a violation of the principles articulated in *Brady*. He also contends that Colon's uncorroborated testimony was insufficient to support his conviction, and that the Superior Court abused its discretion in admitting the People's "unauthenticated white jump drive, which purportedly contained video from the scene of the crime." (Appellant's Br. 20.)[3]

## A. Alleged *Brady* Violation

George argues that the People's failure to produce a legible, executed copy of Colon's plea agreement amounted to a violation of *Brady*, depriving him of his right to a fair trial and to confront a witness against him. He asserts that because he was not given a legible copy of the plea agreement until halfway through Colon's cross-examination, his attorney misstated the terms of the agreement, resulting in objections and the "adverse inference that Appellant's counsel was attempting to mislead the witness or the jury." (Appellant's Br. 17.) This Court reviews the trial court's denial of a motion for a mistrial for abuse of discretion. *United States v. Self*, 681 F.3d 190, 199 (3d Cir. 2012); *see generally Najawicz v. People*, S. Ct. Crim. No. 20120109, 58 V.I. 315, 2013 V.I. Supreme LEXIS 12, *15-26 (V.I. Mar. 15, 2013).

██ A defendant's due process right to a fair trial is violated under *Brady* when the prosecution fails to disclose "evidence favorable to a criminal defendant where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

---

[3] George states in his "Summary of Appellant's Argument" that the Superior Court also erred in denying his motion for judgment of acquittal, and makes passing reference to this motion twice in his arguments. In response, the People argue that George's "challenge to the denial of the Motion for Acquittal is waived" because "he fails to address this issue" in his brief. (Appellee's Br. 4.) In his reply brief, George argues that "[a]lthough Appellant did not separately address the trial court's denial of the Motion for Acquittal, the sum and substance of the arguments in the Motion of Acquittal have been preserved and raised in this appeal." (Appellant's Reply Br. 4.) While George is correct that he raises the same issues in this appeal as he did in the motion for judgment of acquittal, the denial of his motion for judgment of acquittal is "only adverted to in a perfunctory manner," and is therefore waived. V.I.S.CT. R. 22(m). George has also failed to include the transcript of the September 28, 2012 sentencing hearing — in which the court denied his motion for judgment of acquittal — in the Joint Appendix, making any review of the Superior Court's ruling impossible. But because George has properly preserved his challenges to his convictions based on the alleged *Brady* violation, the sufficiency of the evidence, and the admission of the surveillance footage, we will consider these arguments.

*People v. Ward*, 55 V.I. 829, 842 (V.I. 2011) (quoting *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011)) (internal quotation marks omitted); *accord Brady*, 373 U.S. at 87. "Evidence is material if there is a reasonable probability that the outcome would have been different had the evidence been disclosed to the defense." *Bowry v. People*, 52 V.I. 264, 274 (V.I. 2009); *see also United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985); *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011). Therefore, to establish a *Brady* violation, George must show that the plea agreement was (1) suppressed (*i.e.*, the People failed to disclose it), (2) favorable, and (3) material to his defense. *Bowry*, 52 V.I. at 274 (citing *Riley v. Taylor*, 277 F.3d 261, 301 (3d Cir. 2001)). Impeachment evidence falls within *Brady* when the reliability of a witness "may be determinative of a criminal defendant's guilt or innocence." *Id.* ("Evidence that may be used to impeach may qualify as *Brady* material.") (citing *Kyles v. Whitley*, 514 U.S. 419, 445, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)); *see also United States v. Gengler*, 574 F.2d 730, 735 (3d Cir. 1978). "The purpose of *Brady* is not to require the prosecution to disclose all possibly favorable evidence to the defense but to make certain that the defendant will not be denied access to evidence which would ensure him a fair trial." *Stevens*, 55 V.I. at 556 (internal quotation marks omitted).

██ ██ It is clear in this case that the plea agreement — although material — was not "suppressed" within the meaning of *Brady*. *See United States v. Pelullo*, 399 F.3d 197, 204 (3d Cir. 2005) ("Without such suppression, there can be no *Brady* violation, notwithstanding the putative materiality of the subject documents."). While "[t]he prosecution must . . . reveal the contents of plea agreements with key government witnesses," *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (citing *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972)), the United States Supreme Court has explained that *Brady* applies to situations "involv[ing] the discovery, *after trial*, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976) (emphasis added). No such *Brady* violation occurred here, as the People included a copy of the plea agreement among the documents sent to George in the July 18, 2012 disclosures, and other than the portion that was difficult to read, and that it was unexecuted, it was

identical to the copy provided to George by the court upon his request at trial.

■ ■ Although George argues that *Brady* was violated because he could not read the terms of the plea agreement in the copy he received, "*Brady* does not compel the government to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *United States v. Ruth*, 413 Fed. Appx. 439, 441 (3d Cir. 2010). As public record under 4 V.I.C. § 241,[4] the plea agreement was "open to the inspection of any citizen or party in interest under the supervision of the clerk of the court having custody of the records." Colon's plea agreement was on file with the Superior Court for over nine months by the time trial began, and at the very least, George was aware of the plea agreement two weeks before trial when the People included the unexecuted copy in the July 18, 2012 disclosures. George provides no explanation as to why he could not have obtained the executed plea agreement from the court before the day of trial.[5] *See United States v. Valles-Zamora*, 252 Fed. Appx. 701, 703 (5th Cir. 2007) (finding no *Brady* violation where co-conspirator's plea agreement "was filed in the district court . . . and [defendant did] not present any reason why he could not have obtained the plea agreement through reasonable diligence"); *United States v. Willis*, 997 F.2d 407, 412 (8th Cir. 1993) (finding no *Brady* violation where an undisclosed plea agreement "was a matter of public record, fully available to [defendant]" for ten months before trial).

Therefore, because George was aware of the plea agreement and could have obtained it before trial, he cannot establish that the People's failure

---

[4] 4 V.I.C. § 241 provides:

> The sessions of every court of justice shall be open to the public, except as otherwise provided in subtitle 2 of Title 5. The records of every court of justice shall be public records and, except as otherwise provided in subtitle 2 of Title 5, shall be open to the inspection of any citizen or party in interest under the supervision of the clerk of the court having custody of the records, during business hours.

[5] Even if the People had a duty to produce the executed copy of the plea agreement on file with the Superior Court before trial, the outcome here would remain unchanged. Material is not suppressed under *Brady* — and a defendant's due process rights are not violated — so long as it is disclosed in time for its "effective use at trial." *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) (collecting cases). George was provided with the executed plea agreement during Colon's cross-examination, and then proceeded to cross-examine Colon on its contents. George does not argue that the clearer, executed plea agreement would have been useful to his defense for any purpose other than this.

to turn over this document constituted "suppression" under *Brady*. Accordingly, the Superior Court did not abuse its discretion in denying George's motion for a mistrial.

## B. Right of Confrontation

George also argues that without an executed, legible copy of the plea agreement before trial, his right to confront a witness against him was impacted because this caused his attorney to "misstate[] the terms of the plea agreement leading to an objection and adverse inference that Appellant's counsel was attempting to mislead the witness or the jury." (Appellant's Br. 17.) George further argues that "[w]ell-experienced trial attorneys are familiar with the importance and art of cross-examination. The interruption of the rhythm of the cross-examination unduly prejudiced Appellant." (Appellant's Br. 17.)

■ "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). While prominent modern decisions from the Supreme Court of the United States focus on the failure of the government to produce in court a witness for cross-examination by the defendant,[6] where a witness is, in fact, produced in the courtroom the focus shifts to whether constitutionally impermissible restrictions were placed on the cross-examination itself. Thus, to establish that his rights under the Confrontation Clause were violated, George must "show[] that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' " *United States v. Chandler*, 326 F.3d 210, 222 (3d Cir. 2003) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)).[7]

---

[6] *See, e.g., Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713, 180 L. Ed. 2d 610 (2011) (discussing the focus on production of a witness for cross-examination applicable under *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) and cases applying that decision).

[7] Even after *Crawford*, the Supreme Court has cited the *Van Arsdall* line of cases on the issue of permissible restrictions on a defendant's presentation of evidence in his defense. *See, e.g., Clark v. Arizona*, 548 U.S. 735, 770, 126 S. Ct. 2709, 165 L. Ed. 2d 842 (2006).

██ ██ George has made no such showing. During Colon's cross-examination, George's attorney asked Colon if he "got a pretty good plea deal in this case," prompting an objection from the People, which the court overruled.[8] (J.A. 245.) George's attorney then asked him if he was offered six months with credit for time served for his testimony, prompting a second objection from the People claiming that George had

---

[8] The entire exchange between George's counsel and Colon, which George claims denied him the right of confrontation, was as follows:

> ATTORNEY [for George]: . . . Mr. Colon, you got a pretty good plea deal in this case, didn't you?
> ATTORNEY [for the People]: Objection, Your Honor.
> THE COURT: Overruled. I'll permit the question.
> THE WITNESS [Colon]: I got a plea. I don't know nothing 'bout no good.
>
> **BY ATTORNEY [FOR GEORGE]:**
> Q Okay. Do you know how much time you were facing?
> A Twenty? I don't know. 15 to 20?
> Q So 15 to 20 years on just one count?
> A I ain't sure how much count.
> Q Okay. And what was the plea deal that was offered to you?
> A To testify on the person I committed the robbery with.
> Q Um-hum. And what was the sentence that the Government offered to recommend if you testified?
> A I'm not sure.
> Q You're not sure?
> A Nah.
> Q Does a sentence of six months with credit for time served sound accurate?
> A No.
>
> ATTORNEY [for the People]: Objection, Your Honor. That's incorrect.
> THE COURT: Overruled. Your answer, sir, was what?
> THE WITNESS: I don't know.
> THE COURT: You said no? Thank you.
>
> **BY ATTORNEY [FOR GEORGE]:**
> Q Can you tell us what your plea deal was?
> A I ain't really sure.
> Q You're not sure?
> A Nah.
>
> ATTORNEY [for George]: Court's indulgence, Your Honor. (Brief pause) Your Honor, may I approach?

(J.A. 245-46.)

381

incorrectly stated the terms of the plea agreement. The court again overruled the objection. George's counsel then requested a sidebar, during which he explained that his copy of the plea agreement was illegible. The court then called a recess in order to locate the copy of the plea agreement in its files. The court provided this to George's counsel, who then continued with the cross-examination, asking Colon about the terms of his plea agreement and other aspects of his direct-examination testimony without objection. George does not argue, and nothing in the record shows, that the court prevented George from bringing any of the terms of Colon's plea agreement to the attention of the jury, nor was George in any way prevented from exploring Colon's "possible biases and motivation[s]" for testifying. *Chandler*, 326 F.3d at 222. This presents a clear contrast with cases such as *Davis*, *Chandler*, and *Van Arsdall*, in which a defendant was completely prevented from inquiring into a witness's motivations for testifying, violating the Confrontation Clause. *See Davis*, 415 U.S. at 312 (defendant "prevented from revealing that [a prosecution witness] had been on probation for the juvenile delinquency adjudication for burglary"); *Van Arsdall*, 475 U.S. at 679 ("the trial court prohibited *all* inquiry into the possibility that [a prosecution witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge." (emphasis in original)); *Chandler*, 326 F.3d at 222 (defendant prevented from questioning two prosecution witnesses on the sentencing reduction they received in return for their testimony). Here, George has failed to identify any restriction on cross-examination imposed by the court, and he was not "prohibited from engaging in otherwise appropriate cross-examination." *Van Arsdall*, 475 U.S. at 684. Therefore, there was no constitutional violation. *See also Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985) (per curiam) ("the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to [call] to the attention of the factfinder the reasons for giving scant weight to the witness' testimony"); *United States v. Owens*, 484 U.S. 554, 559-60, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988) ("[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987) (alteration and emphasis in original)).

Furthermore, to the extent that George is arguing that the People's two overruled objections were prejudicial because they interrupted the "rhythm of the cross-examination," this assertion is wholly unsupported by any legal authority. Although George cites *United States v. Bermea*, 30 F.3d 1539 (5th Cir. 1994), and *United States v. Lankford*, 196 F.3d 563 (5th Cir. 1999), these cases do not support his argument. Both of these cases have to do with repeated interruptions of defense counsel by the trial judge, allegedly showing bias on the judge's part — and in each case this argument was rejected. *Bermea*, 30 F.3d at 1569-72; *Lankford*, 196 F.3d at 572-73. Here, the People objected twice during Colon's cross-examination, and each objection was overruled. Moreover, appellate courts have rejected Confrontation Clause claims in cases involving *sustained* objections from the prosecution during cross-examination. *See, e.g., United States v. Hall*, 613 F.3d 249, 255-56, 392 U.S. App. D.C. 84 (D.C. Cir. 2010) (no violation where court sustained numerous objections to defendant's line of questioning on prosecution witness's plea agreement); *United States v. Williams*, 9 Fed. Appx. 679, 681 (9th Cir. 2001) (no violation where court sustained one objection on relevance grounds). George points to no authority supporting the proposition that simply raising objections during cross-examination denies a defendant his right to confront a witness against him, and has failed to demonstrate how the People's two objections were prejudicial, given that he was allowed to fully pursue his line of questioning on the plea agreement. Therefore, we reject George's argument that his right to confront Colon was violated, as the Superior Court did not limit his cross-examination in any way, and the mere fact that the People objected during cross-examination does not constitute a Confrontation Clause violation.

## C. Colon's "Uncorroborated and Incredible" Testimony

George also argues that Colon's uncorroborated and incredible testimony was insufficient to convict him. He asserts that in this case, Colon's testimony was uncorroborated, conflicting, and "insubstantial on its face," and therefore could not support the verdict. (Appellant's Br. 18-19.) George points to the fact that Colon provided inconsistent testimony regarding his relationship with George, and that his testimony was inconsistent with the victim's regarding the clothing George was wearing during the robbery. George further argues that Colon's "story of

events" is "completely unbelievable," requiring the reversal of his conviction. (Appellant's Br. 20.)

In reviewing a challenge to the sufficiency of the evidence presented at trial, we must view the evidence in the light most favorable to the People, and affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Mendoza v. People*, 55 V.I. 660, 667 (V.I. 2011) (internal quotation marks omitted).

■ As George concedes, "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." *United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002); *see Krulewitch v. United States*, 336 U.S. 440, 454, 69 S. Ct. 716, 93 L. Ed. 790 (1949); *Caminetti v. United States*, 242 U.S. 470, 495, 37 S. Ct. 192, 61 L. Ed. 442 (1917). An appellate court will uphold a conviction based solely on such uncorroborated testimony unless it is "incredible as a matter of law." *Perez*, 280 F.3d at 344 (citing *United States v. Henderson*, 58 F.3d 1145 (7th Cir. 1995)). "For a witness's testimony to be incredible or insubstantial on its face, it must be 'testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.' " *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991) (quoting *United States v. Garner*, 581 F.2d 481, 485 (5th Cir. 1978)).

■ ■ At trial, Colon testified that he robbed the coffee shop with George, who he knew as Wasee at the time, that George carried a gun during the robbery, and after the robbery they both boarded a safari bus and split company after arriving at Tutu Park Mall. Colon testified that he was present throughout the robbery, and his rendition of the events of the robbery was partially corroborated by Mills's testimony and the surveillance footage. George points to the conflict between Colon's and Mills's testimony regarding what George was wearing, and conflicts within Colon's own testimony regarding the timeline to argue that the testimony was insufficient to support his conviction. But such inconsistencies are not sufficient to support a finding that Colon's testimony was incredible as a matter of law, as they do not support the argument that Colon "physically could not have possibly observed" anything he testified to, or that any of Colon's testimony was impossible under the laws of nature. *See United States v. Gutierrez*, 489 Fed. Appx. 370, 372 (11th Cir. 2012) (holding that even when the "evidence might not be a model of consistency," it is for the jury to decide which testimony

is credible and which is not); *People v. Ramirez*, 30 P.3d 807, 809 (Colo. App. 2001) ("testimony that is merely biased, inconsistent, or conflicting is not incredible as a matter of law").

 Where testimony is not incredible as a matter of law, "[i]t is not for [an appellate court] to re-evaluate a credibility determination made by the jury." *United States v. Phillips*, 401 Fed. Appx. 718, 719 (3d Cir. 2010). George had ample opportunity to attempt to persuade the jury that Colon's testimony was not credible, and appellate review is "not a vehicle to relitigate credibility arguments that were unpersuasive to a jury." *Billu v. People*, 57 V.I. 455, 466 (V.I. 2012). That we should defer to the jury's credibility determinations here is further supported by the Superior Court's two instructions to the jury — before Colon testified,[9] and in the final jury instructions[10] — that "because [Colon] is awaiting sentencing in connection with these events, you must consider his testimony with caution and conside[r] whether and to what extent that fact may influence

---

[9] The court's instruction reads in full:

> THE COURT: Ladies and Gentlemen, you are about to hear the testimony of a witness who has pled guilty to criminal charges as a result of this incident. That witness' testimony is to be evaluated by you in the same manner as that as any other witness. It is for you to determine how much weight to give to his testimony.
>
> However, because the witness is awaiting sentencing in connection with these events, you must consider his testimony with caution and consider whether and to what extent that fact may influence the testimony of the witness.
>
> A witness' plea of guilty to one or more offenses based upon events from which the charges against the defendant also arise, is not proof of the guilt of the defendant and you may not consider the witness' plea of guilty against the defendant in arriving at your verdict.
>
> You may call the witness.

(J.A. 206-07.)

[10] The court's final accomplice testimony instruction read in full:

> THE COURT: . . . . You heard the testimony of a witness who has pled guilty to criminal charges as a result of this incident. That witness' testimony is to be evaluated by you in the same manner as that of any other witness, and it is for you to determine how much weight to give to it. However, because the witness is awaiting sentencing in connection with these events, you must examine that testimony with caution and also considering whether and to what extent that fact may influence the testimony of the witness.
>
> A witness' plea of guilty to one or more crimes based upon the events from which the charges against the defendant also arise is not proof of the guilt of the defendant, and you may not consider the witness' guilty plea as evidence against the defendant in arriving at your verdict.

(J.A. 348-49.)

the testimony of the witness." We must assume that the jury followed the instructions it was given and determined the appropriate weight to give Colon's testimony in light of his plea agreement. *Galloway v. People*, 57 V.I. 693, 711 (V.I. 2012) (citing *Gov't of the V.I. v. Rosa*, 399 F.3d 283, 297 (3d Cir. 2005)); *see also Connecticut v. Johnson*, 460 U.S. 73, 85 n.14, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983). Therefore, viewing the evidence at trial in the light most favorable to the People, we hold that Colon's testimony was sufficient to support George's conviction.

### D. Admission of the Surveillance Footage

Finally, George argues that the Superior Court abused its discretion in admitting the People's "unauthenticated white jump drive, which purportedly contained video from the scene of the crime." (Appellant's Br. 20.) He asserts that the People's "own witness was unable to distinguish the white jump drive from any other white jump drive," and therefore it lacked a proper foundation to allow its admission. (Appellant's Br. 21.) Without this proper foundation, he contends, allowing the jury to view the video contained on the jump drive "resulted in a miscarriage of justice." (Appellant's Br. 21.) We review the Superior Court's admission of evidence for abuse of discretion. *Billu*, 57 V.I. at 461.

Under Federal Rule of Evidence 901(b),[11] to authenticate evidence, the proponent need only make "a *prima facie* showing, to the court . . . not a full argument on admissibility." *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 928 (3d Cir. 1986); *see* FED. R. EVID. 901(a) (a showing that simply "would be sufficient to support a finding that the item is what the proponent claims" is adequate). "Once a *prima facie* case

---

[11] The Federal Rules of Evidence apply in the Superior Court pursuant to section 15(b) of Act No. 7161 (V.I. Reg. Sess. 2010) of the Virgin Islands Legislature, and were in effect at the time of George's trial.

Federal Rule of Evidence 901 provides in part:

(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only — not a complete list — of evidence that satisfies the requirement:

(1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.

is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic . . . ." *Link*, 788 F.2d at 928 (quoting *United States v. Goichman*, 547 F.2d 778, 784 (3d Cir. 1976)). "Rule 901 is satisfied 'if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.' " *United States v. Whittingham*, 346 Fed. Appx. 683, 685 (2d Cir. 2009) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004)).

Campbell, who viewed the video on Jackpots and Java's surveillance system and later as contained on the jump drive, testified that the video contained on the jump drive was a fair and accurate representation of the video, and George stipulated to the chain of custody. The Superior Court admitted the video based on Campbell's testimony, "subject to any further foundational testimony." (J.A. 272.) Mills, the victim of the robbery, testified before the video's publication that the video contained on the jump drive was a fair and accurate representation of what happened during the robbery.

 The People did not provide testimony to the operation of the surveillance cameras or whether they were working properly at the time of the robbery, nor was there any testimony from the technician who extracted the video from the surveillance systems and downloaded it onto the jump drive. But such testimony is unnecessary where a witness who personally observed the events captured on the video testifies to the video's accuracy, as occurred here through Mills's testimony. *Goldin*, 42 Fed. Appx. at 552 (holding that a video was properly authenticated where the camera operator testified to its accuracy); *State v. Wilson*, 135 N.J. 4, 637 A.2d 1237, 1242 (1994) ("any person with the requisite knowledge of the facts represented in the photograph or videotape may authenticate it"); *People v. Dennis*, 2011 IL App (5th) 090346, 956 N.E.2d 998, 1004, 353 Ill. Dec. 870 (2011) (holding that testimony "authenticat[ing] the workings of the device and process that produced the recording" is unnecessary where a witness "testif[ies] that the recording accurately represents what he or she personally saw or heard"). Further, as George points out, there was no testimony as to identifying marks or features of the jump drive that would "distinguish the white jump drive from any other white jump drive." (Appellant's Br. 21.) But such testimony goes to the chain of custody, which George stipulated to at trial, and — like

387

testimony regarding the operation of the cameras — it is unnecessary where a witness to the events in the video testifies to its accuracy. *United States v. Hemmings*, 482 Fed. Appx. 640, 643 (2d Cir. 2012) (a recording can be authenticated either by chain of custody evidence or contemporaneous witness testimony). Therefore, the Superior Court did not abuse its discretion in admitting the surveillance footage.

### E. 14 V.I.C. § 104

 ██ Although George did not challenge the terms of his sentence before the trial court — nor does he in this appeal — this Court has consistently held that improper sentencing in violation of 14 V.I.C. § 104 meets all four prongs of plain error review. *Galloway*, 57 V.I. at 712 (citing *Williams v. People*, 56 V.I. 821, 832 (V.I. 2012) (collecting cases)). Title 14, section 104 provides:

> An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

"Thus, '[t]he plain language of section 104 indicates that despite the fact that an individual can be charged and found guilty of violating multiple provisions of the Virgin Islands Code arising from a single act or omission, that individual can ultimately only be punished for one offense.' " *Galloway*, 57 V.I. at 712 (quoting *Williams*, 56 V.I. at 832).

In its October 25, 2012 Judgment and Commitment, the Superior Court imposed concurrent sentences for both first-degree robbery and first-degree assault, and merged second-degree robbery and grand larceny with first-degree robbery, staying imposition of sentence on those charges. The court also imposed concurrent sentences for the use of a dangerous weapon during first-degree robbery and during first-degree assault. Sentencing was stayed on the charges of using a dangerous weapon during second-degree robbery and during grand larceny, which were merged with the use of a dangerous weapon during first-degree robbery.

 ██ That George was given multiple sentences for the same conduct is made clear by a plain reading of the first-degree robbery statute, 14 V.I.C. § 1862(2), and the first-degree assault statute, 14 V.I.C.

§ 295(3). Section 1862 provides that "[a] person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another perpetrator of the crime: . . . [d]isplays, uses or threatens the use of a dangerous weapon." 14 V.I.C § 1862(2). On the other hand, section 295 provides: "[w]hoever . . . with intent to commit . . . robbery . . . assaults another . . . shall be imprisoned not more than 15 years." 14 V.I.C. § 295(3). Therefore, when George threatened Mills with a weapon in order to rob Jackpots and Java, he simultaneously committed first-degree robbery by threatening the use of a dangerous weapon in the course of committing robbery, and first-degree assault by assaulting Mills with in the intent to commit a robbery. *See* 14 V.I.C § 291 (defining "assault" to include "mak[ing] a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery"). While section 104 does not prohibit prosecution and conviction under both sections, George cannot be subject to punishment under both. *Castor v. People*, 57 V.I. 482, 497 (V.I. 2012) ("an individual can be charged and convicted of violating multiple provisions of the Virgin Islands Code, [but] may only be punished for one offense for each discrete act or indivisible course of conduct" under section 104).

 Therefore, we vacate the Superior Court's October 25, 2012 Judgment and Commitment and remand for resentencing in compliance with 14 V.I.C. § 104. On remand, the Superior Court must announce sentence for both first-degree robbery and first-degree assault, as well as the related weapons charges, *see Ward v. People*, S. Ct. Crim. No. 2012-0077, 58 V.I. 277, 2013 V.I. Supreme LEXIS 9, at *13-14 (V.I. Mar. 6, 2013) (section 104 does not prevent sentencing on related weapons charges in addition to the underlying crime of violence), but stay execution of sentence on one of the crimes of violence and the corresponding weapons charge. *Williams v. People*, S. Ct. Crim. No. 2012-0095, 58 V.I. 341, 2013 V.I. Supreme LEXIS 13, at *24 n.10 (V.I. Apr. 5, 2013) ("section 104 requires the Superior Court to announce a sentence for [each] offense[] and to subsequently stay execution of the sentences in which section 104 is implicated").

## IV. CONCLUSION

The People did not commit a *Brady* violation in providing a copy of Colon's plea agreement that was unexecuted and difficult to read, as this document was a public record that George could have obtained from the

Superior Court. Additionally, Colon's uncorroborated testimony identifying George as his accomplice was not incredible as a matter of law, as Colon did not testify to anything that was physically impossible for him to have witnessed, and any inconsistencies in his testimony were properly left to the jury to resolve. Finally, the surveillance video was properly authenticated, and therefore its admission was not an abuse of discretion. However, the Superior Court committed plain error in imposing sentence on multiple offenses arising out of the same act, and therefore, we affirm George's convictions but remand for resentencing in compliance with 14 V.I.C. § 104.