IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**

November 02, 2020

ST-2017-CR-00031

**TAMARA CHARLES
CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. ST-17-CR-031 |
| v. ) | |
| ) | |
| JEHRELLE ASTER WARNER, ) | |
| ) | Cite as 2020 VI Super 92U |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

¶ 1. **THIS MATTER** is before the Court on the People of the Virgin Islands' "Motion to Allow Witness to Appear via Skype or Other Electronic Real Time Medium at Trial," filed on October 21, 2019. Defendant filed an Opposition on October 23, 2019. The Court held a pretrial conference on October 20, 2020, where the parties informed the Court that they continue to hold the same views expressed in their motions, regardless of the onset of the COVID-19 pandemic. For the reasons set forth below, the Court will grant the People's motion.

### I. Factual Background

¶ 2. Defendant Warner was been charged with various violations of the criminal code in connection with an incident where she allegedly crashed into Wolfgang and Monika Goldammer with her vehicle. The incident occurred when the couple was visiting St. Thomas, Virgin Islands on a cruise. The record reflects that Mrs. Goldammer was pushing Mr. Goldammer across a crosswalk in his wheelchair when they were struck by Defendant's vehicle. Mr. Goldammer later died from his injuries, but Mrs. Goldammer was not seriously injured. Mrs. Goldammer is approximately seventy-five (75) years old and lives in Germany; she is also the People's primary witness. The People, even pre-pandemic, sought the Court's permission to allow Mrs. Goldammer to testify via electronic medium on the grounds that she could not travel due to post-traumatic stress disorder associated with

the incident and her age. The parties' arguments remain the same, but the People's position now appears much stronger because of the COVID-19 pandemic.

## II. The Confrontation Clause

¶ 3. Defendant Warner opposes the remote testimony of Mrs. Goldammer on the grounds that it violates her Sixth Amendment right to confront adverse witnesses. Def.'s Opp'n 2. The Sixth Amendment applies to the Virgin Islands through section 3 of the Revised Organic Act of 1954 and guarantees a criminal defendant the right "to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Revised Organic Act contains a parallel provision, which the Virgin Islands Supreme Court has not, to date, interpreted differently than the Sixth Amendment. *Murrell v. People of the V.I.*, 54 V.I. 338, 354 (V.I. 2010); *but see Balboni v. Ranger Am. of the V.I., Inc.*, 70 V.I. 1048, 1089 (V.I. 2019) (holding that the Virgin Islands Supreme Court has the power to interpret the Revised Organic Act's Bill of Rights as providing greater protection for individual rights than the United States Constitution).

¶ 4. "The Confrontation Clause affords criminal defendants both the right to confront and to cross-examine adverse witnesses." *Browne v. People of the V.I.*, 56 V.I. 207, 221–22 (V.I. 2012). However, the right, like many, has limitations. In *Maryland v. Craig*, 497 U.S. 836 (1990), the United States Supreme Court held that allowing child sexual abuse victims to testify in a separate room where the defendant could see them via a one-way monitor did not run afoul of the Sixth Amendment. *Id.* at 851–52. It stated that "the Confrontation Clause reflects a preference for face-to-face confrontation," which "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849. Confrontation rights "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.

¶ 5.    Courts have relied on this holding to permit live remote testimony in various contexts, including where the witness's health and safety might be compromised by testifying in person. *See United States v. Gigante*, 166 F.3d 75, 79 (2d Cir. 1999) (allowing elderly witness to testify from a remote location while in witness protection program); *see also United States v. Donziger*, No. 19-CR-561 (LAP), 2020 U.S. Dist. LEXIS 157797, at *5–6 (S.D.N.Y. Aug. 31, 2020) (allowing testimony by two-way video because "limiting the spread of COVID-19 and protecting at-risk individuals from exposure to the virus are critically important public policies"); *Virgin Islands v. Tranberg*, 28 V.I. 52, 55 (V.I. Terr. Ct. 1993) (finding that allowing a victim of elder abuse to testify by video would be analogous to the procedure used for child sex-abuse victims). However, courts have recognized that under *Craig*, the government must show not only that remote testimony serves an important public policy, but that it is necessary, meaning there are no alternatives. *United States v. Pangelinan*, No. 19-10077-JWB, 2020 U.S. Dist. LEXIS 157465, at *7 (D. Kan. Aug. 31, 2020) (declining to allow healthy witnesses testify remotely during COVID-19 pandemic); *United States v. Casher*, No. CR 19-65-BLG-SPW, 2020 U.S. Dist. LEXIS 106293, at *8 (D. Mont. June 17, 2020) (requiring witness to testify in-person during COVID-19 pandemic because he could travel by vehicle to courthouse and avoid the increased exposure associated with air travel).

¶ 6.    When allowing remote testimony, courts have evaluated whether the underlying goals of confrontation would still be met without live in-court testimony. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *George v. People of the V.I.*, 59 V.I. 368, 380 (V.I. 2013) (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974)). Another central "purpose of the Confrontation Clause is to ensure the reliability of testimony by permitting the jury to draw conclusions from the manner and demeanor of the witness." *Cascen v.*

*People of the V.I.*, 60 V.I. 392, 412 (V.I. 2014) (quoting *United States v. de Jesus-Casteneda*, 705

F.3d 1117, 1120 n.3 (9th Cir. 2013)). Considering these rationales, courts have found that:

> [A]llowing a prosecution witness to testify during a criminal trial by two-way video conference or two-way closed-circuit television does not violate the defendant's right to confront the witnesses against them where doing so is necessary to protect the health or well-being of the witness or someone else, and the defendant is able to cross-examine and confront the witness through the video platform.

*Commonwealth v. Masa*, No. 1981CR0307, 2020 Mass. Super. LEXIS 109, at *5 (Aug. 10, 2020)

(collecting cases).

## III. Remote Testimony by Mrs. Goldammer

¶ 7. This Court finds that allowing Mrs. Goldammer to testify by live two-way video does not violate Defendant Warner's right to confrontation. Under *Craig*, the Sixth Amendment is satisfied by something other than live face-to-face confrontation if it is necessary to further an important public policy and the reliability of the testimony is assured. 497 U.S. 850. The Court finds that preventing the spread of COVID-19 and not subjecting Mrs. Goldammer, who is an at-risk individual, to a possible infection is an important public policy that can only be served by allowing remote testimony in this situation. *Donziger*, 2020 U.S. Dist. LEXIS 157797, at *5–6; *Masa*, 2020 Mass. Super. LEXIS 109, at *5. Requiring Mrs. Goldammer to travel a great distance across international borders would subject her to significant risk of exposure to COVID-19 and the Court sees no viable alternative in this situation. *See United States v. Davis*, No. 19-101-LPS, 2020 U.S. Dist. LEXIS 196624, at *6–8 (D. Del. Oct. 23, 2020) (allowing witnesses residing "between 611 and 2,706 miles" from the courthouse to testify remotely). The Court is persuaded by *Davis*, which held that "due to the impact of the coronavirus pandemic (especially on long-distance travel), [the] witnesses should not, and are not expected to, leave their homes and communities . . . ." *Id.* at *8. Further, the reliability of Mrs. Goldammer's testimony can be ensured by cross-examination on a two-way video conferencing

platform. Virtual examination will allow jurors to draw inferences about her credibility and the veracity of her testimony just as they would in a live court proceeding. These considerations outweigh Defendant Warner's interest in face-to-face confrontation. *Id.* at *5.

¶ 8.     The Court therefore holds that Defendant Warner's Sixth Amendment right to confront the witnesses against her is satisfied by the live two-way video testimony and cross-examination of Mrs. Goldammer. The Court emphasizes that this holding does not automatically extend to all other requests for remote video testimony during the COVID-19 pandemic. *Pangelinan*, 2020 U.S. Dist. LEXIS 157465, at *7; *Casher*, 2020 U.S. Dist. LEXIS 106293, at *8. This situation involves a myriad of factors weighing in favor of remote testimony. An order of even date follows.

Dated: November ___, 2020

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court
By: _____
Lori Boynes-Tyson
Chief Deputy Clerk  11/4/2020

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,  )
)
Plaintiff,  )
)  CASE NO. ST-17-CR-031
v.  )
)
JEHRELLE ASTER WARNER,  )
)  Cite as 2020 VI Super 92U
Defendant.  )
)

## ORDER

**AND NOW,** for the reasons stated in the accompanying Memorandum Opinion, it is

hereby

**ORDERED** that the People's motion is **GRANTED;**

**ORDERED** that a copy of this Order shall be distributed to Assistant Attorney General

Alexandra C. Bynum, Esquire and Territorial Public Defender Julie S. Todman, Esquire.

Dated: November 2, 2020

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

ATTEST:
Tamara Charles
Clerk of the Court
By:
Dori Boynes-Tyson
Chief Deputy Clerk  11/4/2020